The next case this morning is 523-0390, People v. Harris. Arguing for the appellant is Talon Nuri. Arguing for the appellee is Gary Genetovic. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. Counselor, if you're ready, you may begin. Good morning. My name is Talon Nuri. Representing appellant Mr. Danny Harris, may it please the court. In the more than 20 years since Danny Harris was sentenced to a 40-year prison term for an offense he committed when he was only 17 years old, our society's understanding of juveniles and their brain development has significantly changed, particularly in relation to a juvenile's capacity for rehabilitation. To put society's progress into perspective, in 2002, at the time proceedings began in this case, it would not have been unconstitutional for a 17-year-old such as Harris to have been executed. However, times change. Science progresses, knowledge accumulates, and punishments that were once imposed without question may later be considered constitutionally infirm. To that end, the Illinois Proportionate Penalties Clause acts as a backstop, requiring that punishments in this state reflect society's evolving standards and that they are imposed with the objective of restoring an offender to useful citizenship. And in the juvenile context, the Proportionate Penalties Clause is particularly important in requiring that sentencing schemes imposed on juveniles reflect their immense rehabilitative potential. And here, Danny Harris is a prime example of a juvenile's extreme capacity for rehabilitation. He has been in prison for more than 20 years. He's now over 40 years old and has spent more than half his life in prison for an offense committed again when he was just 17. In that time, he has earned a high school diploma, an associate's degree, and participated in numerous educational programs for self-betterment. He has numerous letters of support, including from prison staff. Most recently, in 2022, he received a glowing review from an instructor at Pickneyville where he's spending his time, which explained how he was a great mentor for incoming prisoners, how he was open and eloquent regarding his need to change and evolve, excuse me, to be more positive and to maintain strong bonds with those close to him, excuse me again, as a means of, excuse me, how he was, sorry. Take your time. Okay, thank you. He was, he's been very open and eloquent regarding his need to maintain strong bonds with those close to him as a means of support, both while he's been in prison and whenever he's released. Unfortunately though, because he was sentenced in 2002, before our society's understanding of a juvenile's capacity for rehabilitation had sufficiently progressed, the Truth in Sentencing Act requires that he serve 100% of this 40-year sentence without any opportunity to demonstrate his rehabilitative potential. If he was sentenced today, however, he would be eligible to utilize these numerous achievements and he would have an ability to demonstrate his rehabilitation after he was sentenced. This is because in 2019, the Illinois legislature, reflecting society's evolving standards of decency and the moral sense of the community, amended the Unified Code of Corrections to ensure that a juvenile who's sentenced to first-degree murder not be required to serve more than 20 years in prison without then being given an opportunity for a parole review hearing wherein he or she could then demonstrate their rehabilitation. While this legislation is not retroactive, it does nevertheless reflect our state's evolving standards of decency regarding juvenile offenders, also involving their culpability and their rehabilitative potential. As such, this legislation should be utilized by this court and other courts of review as a starting point going forward in proportionate penalties analysis claims of this kind. Because the Truth in Sentencing Act requires that he serve every day of his 40-year sentence for an and it does so without any consideration for his immense rehabilitative potential, the Truth in Sentencing Act violates the proportionate penalties clause as applied to Mr. Harris. This court's decision in Peeble v. Barnes is analogous and it provides a rationale that should be applied to the facts of this case. In Barnes, this court looked to recent legislative changes, those which, in that case, which made firearm enhancements discretionary as applied to juvenile defendants. And although those amendments were also not retroactive and thus did not apply directly to the defendant in Barnes, this court nevertheless found that they were indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults. As such, this court found that the sentencing scheme employed by the trial court, which at the time required the mandatory imposition of a 15-year firearm enhancement, it failed to account for the defendant's rehabilitative potential and thus it shocked our community's evolving standards of moral decency and violated the proportionate penalties clause as applied to the facts of that case. It also feels important to note that just as this court looked to recent legislative enactments regardless of the retroactivity to help determine that our community's evolving standards of moral decency for purposes of constitutional analysis, so too did the buffer court, noting that the best way to determine contemporary values is to look at the legislature. In buffer, the court was tasked with determining exactly what sentence would be considered a de facto life sentence. And it looked to recent legislation passed by the Illinois General Assembly, which had instituted a new sentencing scheme for juvenile defendants and set the minimum sentence for defendants who otherwise would have been sentenced to natural life. For juveniles, it imposed a 40-year sentence. And the buffer court looked at this legislation and said that it means that the General Assembly had determined that the specified first-degree murders that would normally justify natural life for adult offenders would warrant a mandatory minimum four years for juveniles. The court further found that based on these recent legislative changes, which were, again, were not retroactive and not applicable to the less reflected the legislature's belief that this 40-year floor complied with the requirements of Miller. Thus, in setting this 40-year line of demarcation for de facto life sentences, the buffer court noted that this 40-year number didn't come from court decisions or legal literature or even statistical data. It wasn't drawn from a hat. Rather, this number found its origin in what the court considered the entity best suited to make such a determination, which was the legislature. And again, after noting the importance of relying on legislative determinations, the buffer court then extrapolated from this prospective legislation and extrapolated that a prison sentence of 40 years or less did not constitute a de facto life sentence in violation of the Eighth Amendment in that case. So, similarly here, the legislature signaled society's ongoing evolution in regards to trying and sentencing juveniles as adults. When it reinstated the parole review for juveniles and in cases of juvenile sentence for first-degree murder, it allows them to demonstrate their rehabilitation after serving the minimum 20-year sentence associated with first-degree murder convictions. And just as in buffer, this court should extrapolate from recent legislation and find that the ceiling is 20 years wherein a juvenile defendant may serve a sentence without being given an opportunity to demonstrate his or her rehabilitation. In light of these recent changes to the sentencing team imposed upon juvenile offenders, which, you know, reinstated the parole review for juveniles, Mr. Harris here has made a substantial showing that the Truth in Sentencings Act's requirement that he served the full 40 years without any similar opportunity to demonstrate his rehabilitation violates the Proportion and Penalty Clause of the Illinois Constitution as applied to him and his established rehabilitation. And briefly and alternatively, I would just like to say that should this court find that the petition itself is deficient in establishing Harris's rehabilitation sufficient to trigger a Proportion and Penalties Clause analysis, then this court should alternatively find that post-commissioned counsel provided unreasonable assistance and should therefore remand for second-stage proceedings. The record is replete, as I said, with evidence of Harris's rehabilitation. He truly is an exceptional inmate, including more than 50 pages documenting his 20 years of education and self-betterment. But for whatever reason, those weren't actually attached to the petition itself. And because this as-applied challenge, of course, hinges specifically on his unique facts and circumstances as they relate to the evolving moral sense evinced in state and federal law regarding juvenile offenders, specifically recognition that juveniles have a much greater capacity for rehabilitation than adults do. Central to this inquiry, of course, was his specific rehabilitative potential and counsel's failure to supplement the filings with those documents, failed to comply with Supreme Court Rule 651C's mandate that counsel obtain and include the necessary supporting documentation. And so this rebuts any presumption of reasonable assistance and should this court find that, again, the petition doesn't establish Harris's rehabilitation, should nevertheless remand for second-stage proceedings in the alternative. If there are no further questions, I will end my time. Counsel, what is the remedy requested of the court? The remedy here is either, in the main argument, is a reversal of his post-conviction, of the dismissal of his post-conviction petition, and either a remand for a third-stage evidentiary hearing where he can establish his rehabilitation, or this court could just allow for a new sentencing hearing where the original conditions of the plea agreement are but with instructions that the Truth in Sentencing Act not be applied to his sentence. All right. Thank you. Any further questions, Ms. Vaughn? No questions. All right. Thank you. You'll have time in reply. Thank you. Counselor? Thank you, Your Honor. Good morning. May it please the Court. My name is Gary Konedovic. I am with the State's Students and Public Prosecutors Office out of Ottawa, Illinois. The case for the court stems from the second-stage dismissal of the defendant's post-conviction petition for failure to take and allege a legal sufficiency of a constitutional violation. The claim here is all based on truth in sentencing and the parole review statute recently enacted in 2019. Defendant argues that drawing upon Illinois' contemporary values as reflected in the parole statute that allows for parole, but these are not reflected in truth in sentencing, so he claims that defendant having to take and serve his sentence at 100% violates Illinois' proportionate penalty clause. On this argument and on this issue, as noted in the people's brief, Watson, Hill, Brakes, Richmond, Pacheco, and Hickston all have addressed the identical arguments, and they have addressed and rejected them, finding that basically two aspects. One, that the fact that defendant will have to serve his sentence at 100% does not render his sentence unconstitutional. Any case, buffer sets the standard at 40 years, 40 years or less, under the 8th Amendment is not cruel and unusual. So now the question gets down to, well, what about proportionate penalties? Well, these cases all address proportionate penalties as well, and what they basically find is, as Hickston points out, truth in sentencing is not penalty related. It has nothing to do with the penalty imposed. It has nothing to do with the sentence imposed. Truth in sentencing simply sets forth the Department of Corrections on how the be carried out, at what term, how long, 185, 50%. And so because it is procedural and is not dealing with punishment, basically neither the 8th Amendment nor Illinois' proportionate penalty clause has anything to do with assessing the constitutionality of the statute. It has absolutely no effect. There is no violation of the 8th or Illinois' proportionate penalty. As Hickston points out, because the defendant cites the Clemens case, and he talks about the fact that proportionate penalties supposedly is broader. Well, the thing of the matter is here, is the fact that, as the court pointed out, subsequent to Clemens, the Illinois Supreme Court has further stated that 8th Amendment and proportionate penalty clause are coextensive. So they say that the distinction in case application turns on whether the statute at issue involves a penalty or a punishment. And as I've already noted, truth in sentencing is procedural, has nothing to do with punishment. It's how the sentence is to be served. That being said, then the question gets down to, well, what about the parole? Well, the parole statute was only applied prospectively. And the Illinois Supreme Court kind of addressed this in the Hilliard case, where they were also talking about anon sentence along with, they also addressed the aspect of parole. And what the Illinois Supreme Court said, and I'm quoting, notably, though the legislature also determined that certain defendants who are under 21 at the time of their crimes will be eligible for parole review up to 10 years, the legislature chose not to make the provision retroactive, such that the provision does not apply to defendant. The legislature's decision not to broaden the statute's reach to all defendants under 21 shows that it was implementing the legislation as a policy change, rather than a reflection that the previous statutory scheme was abhorrent to the community moral sense. Accordingly, the legislative changes do not aim defendants' positions. End of quote. In this case, defendant cannot take and utilize the changes made in the parole provision that are only applicable of those who are sentenced, committed a crime or sentenced after June 1st of 19. The truth in sentencing statute is procedural under the case law and under buffer since it was 40 years. And by the way, this was an agreed guilty plea to which defendant was fully advised, not only of the fact of the 40 year maximum that could be imposed, but also the applicability of truth in sentencing at the time. So under the circumstances of this case, the people maintain that the truth in sentencing provision, the truth in sentencing statute does not violate Illinois' proportionate penalty clause. As far as the request for prayer for relief, remanding this case, okay, and citing all of the evidence that was not attached to the petition, to me anyway, it kind of begs the question. It begs the question because the evidence would only be relevant if indeed defendant were able to obtain a parole hearing. Defendant is trying to get around the fact that the statute is applicable only prospectively by kind of dancing around with the idea of, well, this change in the moral sense of the community and how we treat juveniles. Well, that was also what position was in Hilliard that was obviously rejected. He's offered nothing that would substantively provide the court with anything that would allow this court to ignore the legislature and to apply the parole statute to this defendant. The citation to this court's decision in Barnes, again, I would suggest is distinguishable because in Barnes, it was the application of the sentencing enhancement that affected the actual sentence imposed. That is the reason why this court, I think, addressed what it did. And because of the fact that it did, yes, it looked beyond the fact of whether, not just the fact that the penalty was severe, but in comparing the harsh penalty to other crimes, what this court did is this court then drafted into and addressed the changes, et cetera. But two different statutes are involved here. One affects the punishment, which is in Barnes. This one, the two in the sentencing, does not. So, as you say, Barnes is distinguishable. Do you believe Barnes' analysis is still valid in light of Hilliard? Barnes' analysis, well, I think Barnes' analysis is seriously brought into question considering Hilliard, but separate from that, the fact that the statute involved was a statute that affected the actual punishment imposed, the number of years. I think that is a distinguishing enough feature to take and just distinguish Barnes, and court doesn't really have to necessarily address the continuing rationale that was used, albeit that I think Hilliard somewhat does bring that rationale into question. Aside from that, the people would urge this court to find that the trial judge correctly granted the state's motion to dismiss. With respect to ineffective assistance of counsel, again, attaching all of this evidence is not ineffective at this point because the evidence doesn't address the substantive initial issue of whether or not defendant has stated a valid constitutional claim under Illinois Proportionate Penalty Clause, and because that evidence, that parole evidence is irrelevant, the fact that counsel didn't supply it or didn't attach it does not render his assistance ineffective. So, for these reasons, the people would ask this court to affirm. Thank you. Thank you. Any questions? Justice Schouler? Justice Fong? No. No questions. Okay. Thank you. Counselor, do you have time to reply? Thank you, Your Honors. I just want to start by mentioning, counsel is, of course, correct to mention Dorsey, but it's important to note that in Dorsey, the Supreme Court was very clear that the sentencing scheme as a whole that applies to this kind of analysis. So, although the Truth in Sentencing Act isn't directly related to the actual sentence imposed, it is part and parcel with the sentencing scheme and how that prison term is served. In regards to counsel's claim regarding the Eighth Amendment and the Proportionate Penalties Clause, Clemens does remain good law. There was no, it was not overruled, overturned by Patterson. And some of the cases actually cited by the state in their brief discuss this, what they term as unsettled nature of the two claims. But in Hickson, the court sort of noted that if they are not coextensive, then Pacheco and those line of cases actually are not good law for a proportionate penalties claim. And the Hickson court went on to say that maybe the way for both Patterson and Clemens to remain good law is to determine the coextensive nature of the Eighth Amendment and the Proportionate Penalties Clause depends on whether the statute at issue is a punishment. Because in Patterson, I believe it involved the juvenile transfer statute. So, it wasn't deemed to be a punishment at all. So, the court said Eighth Amendment and Proportionate Penalties Clause doesn't apply at all. And that's the way that those two cases can be synthesized to both be valid. In regards to People v. Hilliard, I believe that counsel didn't give, gave short thrift to the fact that the defendant in Hilliard was not a juvenile. He was an emerging adult. And I will quote as well, the court said defendant's status as an adult also distinguishes this case from the appellate court cases that he relies on finding mandatory firearm enhancements unconstitutional as applied under the Proportionate Penalties Clause. The court again noted that the distinction between a juvenile and an adult remains significant. And the legislative changes in Hilliard, there was a number of changes to various sentencing statutes, but only some of those were applied to people who were over 18 but under 21, as opposed to all of the changes were applied to juveniles. So, the court said that the fact that the legislature chose to only institute some sentencing relief prospectively as it related to adults under 21, as opposed to mirroring all of the changes that apply to all juveniles, the court then found that that distinction reflected the court's belief that the sentencing provisions were not being deemed abhorrent to the community's moral sense as it relates to under 21-year-olds. It did not make a similar finding as it relates to juveniles because, of course, that wasn't at issue in that case. And then just very quickly regarding the guilty plea. This was a partially negotiated plea, but the Truth in Sentencing Act was not a condition by either party. It was a definite, immediate, and automatic effect of the punishment that neither party had any ability to negotiate around. So, it wasn't a condition of the agreement in any way. It shouldn't be argued as a waiver or forfeiture. And lastly, regarding unreasonable assistance of counsel, I believe the state may be going into the substance of the claims when that's not necessarily or that's not proper at this point of second stage proceedings. If counsel did not comply with Supreme Court Rule 651C, Addison would direct that it be remanded for second stage proceedings regardless of the propriety of the underlying claims. And if there are no more questions, I will end my time. Okay. Justice Vaughn? No other questions. Thank you. Mrs. Schouler? No questions. All right. Counselors, thank you both for your arguments and your briefs today. The court will take the matter under consideration and issue its ruling in due course.